*158 OPINION *
ROTH, Circuit Judge
Christine Yoder entered a guilty plea on two counts of producing child pornography and two counts of distributing child pornography. She was sentenced to twenty-five years’ imprisonment followed by ten years of supervised release and required to pay $400 in a special assessment. On appeal, Yoder challenges the District Court’s sentence as procedurally and substantively unreasonable. We will affirm.
I. Background
Christine Yoder is thirty-two years old and suffers from severe mental disabilities and mental illness. She is estimated to have the intellectual level of approximately a nine-year-old child and has been diagnosed with, among other things, impulse control disorder related to post-traumatic stress disorder in part due to considerable abuse that she has endured at the hands of several different men starting when she was two years old. She has four children and, until her arrest, lived in Philadelphia.
On May 21, 2014, Yoder communicated online with a confidential source for the FBI. The communication was subsequently taken over by an undercover agent. During this online conversation, Yoder sent sexually explicit pictures of her six-year-old daughter and offered to fly her daughter to Detroit, Michigan, for sexual activity. She said that she wanted to find her daughter a husband and that the daughter would be with the man to whom she was communicating for the rest of his life. She provided enough information for the man to purchase an airplane ticket for her daughter to travel to Detroit.
Two days later, on May 23, 2014, Yoder reiterated to the undercover agent that she was “serious” about sending her daughter to him and sent him more sexually explicit messages. Later that day, Yoder was arrested at her home. The arresting officers recovered approximately forty images of child pornography, thirty-six of which depicted Yoder’s six-year-old and the remainder of which depicted Yoder’s one-year-old daughter.
Yoder gave a statement to FBI agents, confessing to producing and distributing child pornography. She said that she contacted' men online to “see who was sick.” She said that she did not intend to send her daughter away, but she also said that “the plan was to let the man take her daughter for the summer and see what happened after that.”
On October 30, 2014, a grand jury in the Eastern District of Philadelphia returned a four-count indictment charging Yoder with two counts of employing a child to produce images of the child engaging in sexually explicit conduct in violation of 18 U.S.C. § 2251(a) and two counts of distributing material involving the sexual exploitation of children in violation of 18 U.S.C. § 2252(a)(1).
On March 9, 2015, Yoder entered a plea of guilty on all four counts. Subsequently, she submitted a sentencing memo arguing for a downward departure and a down-' ward variance from the Sentencing Guidelines range on the basis of her personal characteristics and history, which the prosecution opposed in its sentencing memo. On October 20, 2015, the District Court held a sentencing hearing. At the hearing, the defense called witnesses, including an expert, Dr. Faye Sultan, who testified regarding Yoder’s psychological and intellec *159 tual state and her likelihood of reoffending. Yoder herself spoke briefly. The District Court heard argument about the defense’s requests for a departure and a variance from the Guidelines.
After hearing testimony and argument, the judge said:
Ms. Yoder, this Court has the responsibility of fashioning a sentence that takes into account not only the person that stands in front of me, but the crime that was committed. I think we have all agreed that this crime is the most serious crime. There is clearly the need for protection of your children and any other children that you might come in contact with. There is also the history, your history that was presented to the Court. The Court has to take that into consideration.
And taking it into consideration, I will grant the variance. I think a modest variance. I will deny the downward departure, but in granting the variance, I still recognize that while you have had a very tragic history, you brought four little girls into this world, you’re responsible for them, and you’re responsible for the consequences of your actions in regards to them and anybody else, and that it is necessary, in recognition of the seriousness of the offense and the need to protect your children and others, that you receive a sentence that is a substantial sentence, although a little less than the Sentencing Guidelines, but more than what your attorney has recommended.
The judge then imposed sentence. Yoder did not object to the sentence at the time, but she timely appealed her sentence on the grounds that it is procedurally and substantively unreasonable.
II. Discussion[1]
Because Yoder did not timely object to the District Court’s procedure at sentencing, we review the procedural reasonableness of the District Court’s sentence under a standard of plain error.[2] We review the substantive reasonableness of the District Court’s sentence for abuse of discretion.[3]
A. Procedural Reasonableness
When an appellant did not object to an error occurring before the district court, we exercise plain error review. Under this standard, the Court considers whether: (1) there was an error; (2) the error was “plain”; (3) the error affects substantial rights—ordinarily, whether the error was prejudicial; and (4) the error “seriously affects the fairness, integrity, or public reputation of judicial proceedings.”[4]
In sentencing, a district court must follow a three-step process:
First, a district court must calculate a defendant’s Guidelines sentence.... Second, a district court must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit’s pre-Booker case law, which continues to have advisory force. Third, a district *160 court is required to exercise its discretion by considering the relevant § 3558(a) factors ... in setting the sentence it imposes regardless whether it varies from the sentence calculated under the Guidelines.[5]
One goal of this process is to provide an adequate record for an appeals court to verify that the district court considered the arguments of the parties. However, a court need not address parties’ arguments or the sentencing factors at length; they need only be given “meaningful consideration.”[6]
Here, the District Court followed the appropriate steps and provided an adequate record, so it did not commit plain error. The first step is to calculate the Sentencing Guidelines range, and here the Sentencing Guidelines range was undisputed: both parties acknowledged that it was thirty years to life. The second step is to rule on any motions from the parties and state on the record whether any departure is granted. The District Court denied defense counsel’s request for a departure. Yoder does not argue that the District Court erred in either of these steps.
The third step is for the court to exercise its discretion. In doing so, the court must consider the § 3553(a) factors, which the District Court here did. The judge considered “the crime that was committed,” which she described as “the most serious crime.”[7] This consideration relates to § 3553(a)(1), “the nature and circumstances of the offense,” as well as § 3553(a)(2)(A), the need for the sentence “to reflect the seriousness of the offense .... ” She considered “the need for protection of your children and any children that you might come in contact with,”[8] which relates to § 3553(a)(2)(C), the need for the sentence “to protect the public from further erimes of the defendant. ...” She considered “the person that stands in front of me” and “[the defendant’s] history that was presented to the Court,”[9] which relates to § 3553(a)(1), “the history and characteristics of the defendant. ...” She explicitly balanced all these factors together and related them to the sentence when she said, “[I]n granting the variance, I still recognize that while you have had a very tragic history, ... it is necessary, in recognition of the seriousness of the offense and the need to protect your children and others, that you receive a sentence that is a substantial sentence .... ”[10] Thus, the District Court considered the relevant § 3553(a) factors.
Yoder argues on appeal that the District Court entirely failed to consider two potentially meritorious arguments in relation to the sentence and therefore exercised its discretion improperly. First, Yoder requested a variance to the statutory minimum of fifteen years on the basis of her personal characteristics and history.[11] The judge responded to Yoder’s arguments by noting that the sentence “t[ook] into account the person that stfood] in front of’ the District Court, as well as referring to the defendant’s “very tragic history.”[12] *161 These statements, coupled with the fact that the judge did grant a variance, suggest that the judge considered Yoder’s arguments for a variance. Thus, we are not persuaded that the judge committed plain error by entirely failing to consider Yo-der’s personal characteristics and history.
Second, Yoder argued that the Guidelines range for child pornography offenses is unreasonably high because it was developed by congressional directive rather than by the Sentencing Commission pursuant to its usual institutional role.[13] This argument was based on our holding in United States v. Grober that it would not be an abuse of discretion for a district court to conclude that “a within-Guidelines sentence would not meet the sentencing purposes set out in § 3553(a), even in a typical [child pornography] case.”[14] The District Court did not explicitly respond to this argument, and on appeal, Yoder argues that this lack of response constitutes plain error requiring reversal. We disagree. Yoder cited Grober in support of an argument for a downward variance, and the District Court granted a downward variance. Thus, there .was no reason for the District Court to further address Gro-ber.
Although the judge’s comments were brief, the judge provided enough of a record to show that she considered the parties’ relevant arguments. Consequently, the sentence was not procedurally unreasonable.
B. Substantive reasonableness
A sentence may be reversed as substantively unreasonable if “no reasonable sentencing court would have imposed the same sentence on that particular defen-, dant for the reasons the district court provided.”[15] This is a high bar; only rarely will it be “clear that no acceptable reasoning can justify a given sentence.”[16] Generally, “[i]n reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may .., take the degree of variance into account and consider the extent of a deviation from the Guidelines .... ”[17] However, an appeals court may not apply a presumption of unreasonableness to an outside-Guidelines sentence, require extraordinary circumstances to justify an outside-Guidelines sentence, or use “the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.”[18] A below-Guidelines sentence is not likely to be substantively unreasonable on the ground that it is too long.[19]
Here, Yoder presented plausible arguments for a downward variance, including that she was amenable to treatment and had diminished culpability due to her mental disabilities and tragic history.
*162 After considering these arguments, the judge granted the variance; it was simply smaller than Yoder felt was appropriate. None of Yoder’s unique circumstances obliged the District Court to grant the maximum variance permitted by statute. The District Court was permitted to weigh Yoder’s likelihood of reoffending against •the potential harms if she did reoffend— which, as no one disputes, could be extremely serious—and determine that a small variance, rather than the maximum variance, was appropriate. The sentence was not substantively unreasonable.
III. Conclusion
For the foregoing reasons, we will affirm the judgment of the District Court.

 This disposition is not an opinion of the full Court and pursuant to I.O.P, 5.7 does not constitute binding precedent.

. The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We have jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

. United States v. Flores-Mejia, 759 F.3d 253, 258 (3d Cir. 2014)

. Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L,Ed.2d 445 (2007).

. Flores-Mejia, 759 F.3d at 259.

. Id. at 256 (internal quotation marks, citations, and brackets omitted).

. Id.

. App. 166.

. Id.

. Id.

. Id.

. See 18 U.S.C. 3553(a)(1).

. These individualized considerations distinguish this case from United States v. Olhovsky, 562 F.3d 530 (3d Cir. 2009), on which Yoder relies heavily, because in Olhovsky, the sentencing court omitted "any consideration for [the defendant’s] subnormal social develop *161 ment” and amenability to treatment despite testimony regarding these points. Id. at 550. The judge considered these points here, albeit briefly.

. See App. 47.

. 624 F.3d 592, 608 (3d Cir. 2010).

. United States v. Tomko, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

. United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008).

. Gall v. United States, 552 U.S. 38, 47, 128 S.Ct 586, 169 L.Ed.2d 445 (2007).

. Id.

. See United States v. Diaz-Pellegaud, 666 F.3d 492, 504 (8th Cir. 2012) ("Where a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion.”) (quoting United States v. Moore, 581 F.3d 681, 684 (8th Cir. 2009)) (internal quotation marks and brackets omitted).